**Donald WOODS and Diane Woods on behalf of their daughter, T.W., Plaintiffs,**

v.

**NEW JERSEY DEPARTMENT OF EDUCATION; New Jersey Department of Human Services, Division of Development of Human Services, Division of Youth and Family Services; Monroe Township Board of Education, Defendants.**

Civ. No. 91–4250.

United States District Court, D. New Jersey.

July 2, 1993.

---

**52**

Rebecca K. Spar, Cole, Schotz, Berstein, Meisel & Forman, Hackensack, NJ, for plaintiffs.

Richard J. Kaplow, Weinberg and Kaplow, Springfield, NJ and Brian C. Darreff, Marshall, Dennehey, Warner, Coleman & Goggin, Marlton, NJ, for defendants Monroe Tp. Bd. of Educ.

Eric Neisser, Newark, NJ, for deponent Marilyn Arons.

## OPINION

KUGLER, United States Magistrate Judge:

Deponent Marilyn Arons brings this motion for the entry of a Protective Order pursuant to Fed.R.Civ.P. 26(c), quashing the subpoena issued for Arons' deposition by defendant Monroe Township Board of Education ("Board of Education").[1] For the reasons set forth below, Arons' motion is denied without prejudice.

FACTS AND PROCEDURAL BACKGROUND

Plaintiffs Donald and Diane Woods filed this action on behalf of their daughter T.W., alleging that various state and local agencies in New Jersey violated the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400–1485 and 42 U.S.C. § 1983 by failing, *inter alia*, to fund the residential portion of T.W.'s placement in an out-of-state residential education facility.

Since the fall of 1990, the Woods have been involved in ongoing litigation against the Board of Education and several agencies of the State of New Jersey. This litigation has involved various state and administrative hearings, as well as the present action.[2] Deponent, Marilyn Arons, a lay advocate for parents in special education disputes, represented the plaintiffs during the proceedings before the New Jersey Office of Administrative Law ("OAL").[3] The IDEA guarantees parents an "impartial due process hearing", 20 U.S.C. § 1415(b)(2), and authorizes parents to "be accompanied and advised by counsel and by individuals with special knowledge and training with respect to the problems of handicapped children." *Id.* at § 1415(d)(1). New Jersey Court Rules authorize non-lawyers to represent parents or

---

1. Plaintiffs Donald and Diane Woods join Arons' motion.

2. The facts and procedural background of this litigation are adequately set forth in one published and two unpublished opinions previously rendered by this Court. *See Woods v. New Jersey Dep't of Educ.*, No. 91–4250, slip op. (D.N.J. Feb. 22, 1993); *Woods v. New Jersey Dep't of Educ.*,

No. 91–4250, slip op. (D.N.J. Jul. 15, 1992); *Woods v. New Jersey Dep't of Educ.*, 796 F.Supp. 767 (D.N.J.1992).

3. The areas in which Arons provided non-attorney representation are set forth in her affidavit at ¶ 19.

children in special education proceedings before the OAL. N.J.C.R. 1:21–1(e)(8).[4] The New Jersey Administrative Code governs the application process and the appropriate standards of conduct. *See* N.J.A.C. 1:1–5.4, 1:1–5.5, 1:6A–5.1.

The defendant Board of Education has subpoenaed Arons and her "original file relating to Donald and/or Diane Woods and/or T.W., plaintiffs in this action for a deposition." In support of her motion for a protective order, the deponent argues that the testimony and material sought is irrelevant. Arons argues alternatively that the discovery is protected by the attorney-client privilege and the work-product doctrine, or protected under Fed.R.Civ.P. 26(b)(4)(B).[5] The deponent further asserts that disclosure would violate the plaintiffs' due process and equal protection rights.

DISCUSSION

■ Discovery, generally is governed by Fed.R.Civ.P. 26. This rule provides for the discovery of relevant information. Fed. R.Civ.P. 26(b). "Relevance" under the rules is a term of art, and encompasses any information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The Supreme Court has defined the scope of discovery as extending to "any matter that bears upon, or that reasonably leads to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978).

■ Applying these standards to the present case, the court is hard pressed to discern the relevancy of this information. The Board of Education contends that this discovery is relevant as the claims asserted by plaintiff in this action are essentially the same as those asserted in the administrative proceeding— that T.W.'s educational placement as determined by the Board of Education was inappropriate. Defendant further argues that this discovery is relevant to a potential defense of the defendant. Specifically, the defendant argues that the Woods' may have been advised to enter into the Settlement Agreement, providing placement at residential facility for nine months, in an effort to invoke the "stay put" provision of the IDEA and accomplish procedurally what the plaintiffs could not accomplish on the administrative level.[6]

These arguments are unpersuasive. The defendant cannot establish relevancy by simply asserting that the administrative proceeding is substantially the same as the pending federal action. As a party to the administrative proceeding, the Board of Education presumably possesses all relevant information from the earlier proceeding. Furthermore, even if the discovery sought supports defendant's allegation that the settlement was entered into as a tactical maneuver, it is unclear what defense would be available to the defendant.

While the defendant's arguments are nebulous, this discovery is arguably relevant under the liberal mandate of the Federal Rules. Consequently, the court will not grant Arons' motion on relevancy grounds. Instead the court will address the question of privilege.

4. This provision was amended, effective September 1992 in response to *Arons v. New Jersey State Bd. of Education,* 842 F.2d 58 (3d Cir.1988), *cert. denied* 488 U.S. 942, 109 S.Ct. 366, 102 L.Ed.2d 356 (1988). In *Arons,* the Third Circuit held that such representation was impermissible under the rule as originally written. *See* Civil Practice Committee's Report, 130 N.J.L.J Index page 530 (February 24, 1992). The OAL had previously allowed non-attorney representation of parents of handicapped children pursuant to subsection (e)(1) which allows for the appearance of a non-attorney where required by federal statue or regulation. Prior to the effective date of the amendment, Supreme Court Orders, dated February 7, 1990 and December 20, 1990, relaxed the rule to permit the appearance by a non-attorney in a contested cased before the OAL to represent parents of handicapped children.

5. Fed.R.Civ.P. 26(b)(4)(B) protects from discovery facts or opinions held by an expert retained in preparation for trial but not expected to testify except upon a showing of exceptional circumstances.

6. The "stay put" provision provides, that "[d]uring the pendency of any proceedings conducted pursuant to this section, ..., the child shall remain in the then current educational placement of such child." 20 U.S.C. § 1415(e)(3).

■ Whether requested discovery is privileged is determined by the Federal Rules of Evidence, Rule 501. *See Goldinger v. Boron Oil Co.*, 60 F.R.D. 562 (W.D.Pa.1973) *aff'd* 511 F.2d 1393 (3d Cir.1975) *cert. denied* 423 U.S. 834, 96 S.Ct. 59, 46 L.Ed.2d 52 (1975). This rule reads, in pertinent part, as follows:

> Except as otherwise required ... the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States ... However ... with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege ... shall be determined in accordance with State law.

Fed.R.Evid. 501. Here the plaintiffs have filed suit under the IDEA, 20 U.S.C. § 1400–1485 and 42 U.S.C. § 1983. Thus federal common law applies to the question of privilege raised by this motion.

Specifically, the deponent seeks to establish that communications between Arons and plaintiffs while Arons represented the plaintiffs as a lay advocate in the administrative proceeding, are protected from discovery. The deponent argues that the court should extend the attorney-client privilege to lay advocates authorized to perform attorney-like functions or recognize an analogous privilege.

■ It is well established that Fed.R.Evid. 501 protects communications between an attorney and a client. *See generally Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); 8 J. Wigmore, *Evidence* § 2291 (McNaughton rev. 1961). Traditionally, this privilege has only applied to communications made to a licensed attorney. Here the deponent seeks to extend this privilege to communications between a lay person and a client whom the lay person has represented and continues to represent in administrative proceedings.

Courts addressing the question of whether a privilege extends to a person's communications with her or his lay representative have reached conflicting results. This issue was first addressed in the context of state statutes allowing any citizen to employ any other citizen of reputable character to represent him or her in court. *Compare Bean v. Quimby*, 5 N.H. 94 (1829) (holding that communications were privileged as a necessary incident to the statutory right and the confidence necessary in such a relationship must be preserved) *with McLaughlin v. Gilmore*, 1 Ill.App. 563 (1878) (holding that communications are not privileged as the representing party was not employed as an attorney but merely as an agent).

Courts are similarly split on whether the attorney-client privilege extends to patent agents in proceedings before the Patent Office. *Compare Joh. A. Benckiser G.m.b.H., Chemische Fabrik v. Hygrade Food Products Corp.*, 253 F.Supp. 999 (D.N.J.1966); *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357 (D.Mass.1950) (holding the attorney-client privilege does not apply to patent agents) *with Vernitron Medical Products, Inc. v. Baxter Laboratories, Inc.*, 186 U.S.P.Q. 324, 1975 WL 21161 (D.N.J.1975); *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377 (D.D.C.1978) (extending the attorney-client privilege to patent agents).

In a factual setting more similar to the present, the California Supreme Court held that in an administrative fair hearing, a dissatisfied applicant or recipient of public social services impliedly is provided by statute a privilege through his lay representative that is comparable to an attorney-client privilege. *Welfare Rights Org. v. Crisan*, 33 Cal.3d 766, 190 Cal.Rptr. 919, 661 P.2d 1073 (1983). The *Crisan* court determined that a California statute allowing lay representatives in administrative fair hearings brought pursuant to the Aids to Families with Dependent Children Act ("AFDC") necessarily implied the legislative intention to protect the confidentiality of the communications between the representative and the claimant. *Id.*

The rationale supporting a lay advocate privilege is premised upon the substance of the function, rather than the label. *Vernitron Medical Products, Inc.*, 186 U.S.P.Q. at 324. In determining whether the privilege is warranted, courts have considered whether the law expressly authorizes lay advocates to provide the same representation provided by

licensed attorneys, whether lay advocates are subject to an extensive system of regulation requiring individual application, proof of expertise, compliance with ethical standards, and direct control by the adjudicative tribunal, and whether the purposes of the privilege are fully applicable to this kind of representation. *Id.*

The countervailing policy, adopted by courts declining to extend the attorney-client privilege to lay advocates, appears to be that the need for disclosure requires the attorney-client privilege to be "strictly confined with the narrowest possible limits consistent with the logic of its principle." 8 Wigmore at § 2291.

This court finds both policies support recognition of a lay advocate privilege in the present case. "Congress manifested an affirmative intention not to freeze the law of privilege. Its purpose rather was to 'provide the courts with the flexibility to develop rules of privilege on a case-by-case basis.'" *Trammel v. United States,* 445 U.S. 40, 47, 100 S.Ct. 906, 911, 63 L.Ed.2d 186 (1980) (quoting 120 Cong.Rec. 40891 (1974)). Several factors warrant the existence of a lay advocate privilege in this instance. First, New Jersey Court Rule 1:1–21(e)(8) specifically authorizes lay advocacy before the OAL to represent parents or children in special education proceedings. Similarly, the Administrative Code provides that an application must be made, the OAL has control over the lay advocate and the lay advocate must follow the Rules of Professional Conduct ("RPC"). *See* N.J.A.C. 1:1–5.4 and 1:1–5.5.[7]

■ Certainly, the purpose of the attorney-client privilege is applicable to Arons' representation of the plaintiffs. The purpose of the privilege is to encourage uninhibited discourse between the client and attorney and thereby to enhance the quality of legal service rendered, *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The substance of this relationship is one of an attorney and client. The necessity of full and frank communications between Arons and the plaintiffs is no less compelling solely because Arons is not a licensed attorney.

■ Therefore, this court concludes that the communications between Arons and the plaintiffs while Arons represented the plaintiffs as a lay advocate are privileged to the extent allowed under the attorney-client privilege.[8] Similarly, work-product protection may also be afforded.

While the court is willing to extend this protection to Arons, the present motion to quash the subpoena is denied without prejudice. At this juncture, the court cannot hold that all materials and communications are privileged. If the deponent seeks to invoke the work-product doctrine, she must follow the procedures outlined in General Rule 16C, General Rules for the District of New Jersey. Likewise, the defendant may depose Arons on matters not privileged.

An appropriate Order will enter.

### ORDER

This matter having been brought before the Court by Eric Neisser, Esquire, attorney for the deponent Marilyn Arons, for an order quashing the subpoena issued by the defendant Monroe Township Board of Education; and the court having considered the written submissions and oral argument of the parties; and for the reasons set forth in the court's opinion of this date;

---

7. Although N.J.A.C. 1:1–5.5(g) which lists applicable RPCs does not list RPC 1.6 Confidentiality of Information, the summary to the OAL's proposed amendments to the Uniform Administrative Procedure Rules, N.J.A.C. 1:1 indicates that this list is merely illustrative and not exhaustive—"[t]he proposed amendment ... specifies that non-lawyer representatives must be guided by the appropriate standards of conduct in the Rules of Professional Conduct for attorneys". 24 N.J.R. 321 (Feb. 3, 1992). Likewise, the court is not troubled by the fact that during part of Arons' representation of plaintiffs, the rule did not specify that lay advocates must follow the RPCs. The addition of subsection (g) merely expanded existing regulations.

8. The court need not address deponent's argument that the discovery is privileged under Fed. R.Civ.P. 26(b)(4)(B) nor deponent's constitutional arguments.

IT IS this 2nd day of July, 1993 hereby ORDERED that the deponent's motion is **DENIED WITHOUT PREJUDICE.**